UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Armando Arce,

                                    Plaintiff,                                    **Report and Recommendation**

                v.                                                                        18-CV-635 (LJV)

David L. Turnbull *et al.*,

                                    Defendants.

## I.    INTRODUCTION

Around 10 years ago, *pro se* plaintiff Armando Arce went through divorce and child-custody

proceedings in Chautauqua County Family Court.  By the end of 2014, Chautauqua County Family

Court issued a final order and judgment concerning custody of plaintiff's son that plaintiff did not

like.  What plaintiff did about that in the state-court system is not fully discernible in the docket for

this case.  What is discernible is that plaintiff has tried to use federal court twice to change what

happened in state court.  Plaintiff filed suit in this District in 2017 challenging the outcome of his

child-custody proceedings.  District Judge Lawrence Vilardo dismissed the suit, and the Court of

Appeals for the Second Circuit dismissed plaintiff's appeal.  Plaintiff now has returned to this

District, taking the same child-custody goal and dressing it up as a claim that the state-court system

violated the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. §§ 12112–12117.

Defendants David L. Turnbull, Michael F. Griffith, Chautauqua County, and the State of

New York now have filed motions to dismiss under Rule 12(b) of the Federal Rules of Civil

Procedure.  (Dkt. Nos. 11, 16.)  In short, defendants have advanced a number of arguments

pertaining to jurisdiction, res judicata, limitations periods, insufficiency of claims, and both judicial

and sovereign immunity.  Plaintiff did not respond except to file his own motion for appointment of

counsel (Dkt. No. 18), most of which is a continued attack on the substance of the proceedings that

occurred in Chautauqua County Family Court.

Judge Vilardo has referred this case to this Court under 28 U.S.C. § 636(b).  (Dkt. No. 13.)

The Court has deemed the motions submitted on papers under Rule 78(b).  For the reasons below,

the Court respectfully recommends granting defendants' motions and denying plaintiff's motion.[1]

## II.    BACKGROUND

This case is plaintiff's latest effort to use federal court to overturn Chautauqua County

Family Court orders concerning custody of his son.  Understanding the history of plaintiff's efforts

requires visiting a prior case that plaintiff filed in this District.  On July 25, 2017, plaintiff filed a

complaint against Chautauqua County Family Court and Support Magistrate David L. Turnbull from

that court, claiming a deprivation of due process and equal protection.  (Case No. 17-CV-696 (the

"First Case"), Dkt. No. 1.)  Plaintiff wrote the following about his allegations in the First Case:

> My ex-wife (Ms. Swanson) petitioned Chautauqua Family Court for a
> modification of support.  After being summoned to court, I discovered that Ms.
> Swanson had moved my son to an undisclosed location out of state.
>
> Ms. Swanson moved without my knowledge, without court approval, in
> violation of our custody and visitation agreement, and in violation of our divorce
> judgment.  Ms. Swanson has shown total disregard of our divorce judgment.
>
> I brought this violation to Magistrate David L. Turnbull's attention in court.
> This is when and where I attempted to assert my rights.  The initial proceedings held
> on November 2014, where I indicated to Magistrate David L. Turnbull that Ms.
> Swanson moved out of state to an undisclosed location.  The Magistrate angrily
> asked Ms. Swanson if this was true, she said yes.  The Magistrate changed the topic
> and never revisited my grievance.  The magistrate did not compel Ms. Swanson to
> provide a corrected address.  Additionally the magistrate did not request proof of
> custodial parent's relocation is in the best interest of the child.  Magistrate David L.

---

[1] As a request for appointment of counsel, plaintiff's motion technically is non-dispositive.  The Court is
bundling plaintiff's motion into its recommendation because he wrote his motion in such a way that it is
intertwined with the substance of defendants' motions.

2

Turnbull closed the case without protecting my legal rights to my son or providing any relief what so ever.

Even though he had jurisdiction, Magistrate David L. Turnbull made the conscientious decision to allow my legal rights to my son to be stripped from me without a trial; without the due process of law. He did nothing to stop my ex-wife nor did he provide me with any form of relief. For approximately three years, Ms. Swanson has refused me access and refused to reveal her address. Ms. Swanson had effectively prevented me from having a relationship with my son.

(First Case, Dkt. No. 1 at 5.) Plaintiff concluded by seeking the following relief:

I am requesting $12,300.00 in compensatory damages for lost wages and relocation costs. I am also requesting $3,000,000.00 in punitive damages for severe emotional distress and depression.

I lost my temporary job due to not being able to pay for travel; eventually my family and I became homeless. I had to live in homeless shelters and borrow money from family members in order to relocate.

Prior to my son moving back in with his mother, he was living with me for almost two years. Ms. Swanson's misdeed could have been corrected; Ms. Swanson had a legal obligation to provide me access to my son. Even if it was Ms. Swanson's intention to entirely restrict a relationship with me and my son, the burden of complying with our judgement of divorce fell on her. When Magistrate David L. Turnbull failed to act, he allowed my son to be taken from me.

Almost three of his adolescent years are taken from me, his father. How in the world will I ever get that back?

(*Id.* at 6.) Plaintiff filed an amended complaint on January 29, 2018, adding numerous details about his Family Court matter and adding more defendants including the Eighth Judicial District of the New York State Unified Court System. (First Case, Dkt. No. 5.) Plaintiff filed a second amended complaint on February 20, 2018, adding Chautauqua County as a defendant and further refining the details of his Family Court matter. (First Case, Dkt. No. 6.) Plaintiff again made very clear what the point of his litigation was: "When I finally had stable housing and employment, I began researching my case. I gained access to a law library and began studying New York State Family Law. I finally discovered the serious errors Magistrate David L. Turnbull had made. This outrage was one

3

hundred percent avoidable." (*Id.* at 7.)  On May 7, 2018, plaintiff filed what he titled an emergency

motion for a Temporary Restraining Order or preliminary injunction blocking the function of

Support Magistrates in Chautauqua County Family Court.  (First Case, Dkt. No. 8.)  Plaintiff left no

doubt about the goal of his motion; he described it as "my third attempt to overrule a Support

Magistrate's decision to interfere with the relationship between me and my son.  I have asked the

defendants to make every effort for the reunification of me with my son." (*Id.* at 2.)  Plaintiff filed a

third amended complaint on August 6, 2018 and a fourth amended complaint on November 5,

2018.  (First Case, Dkt. Nos. 14, 23.)

    The defendants in the First Case filed motions to dismiss, and Judge Vilardo granted the

motions on September 17, 2019.  (First Case, Dkt. No. 39.)  Judge Vilardo concluded that

defendants David L. Turnbull, Michael K. Bobseine, and Michael Sullivan had judicial immunity

from suit.  Judge Vilardo concluded further that the New York State Unified Court System and

Chautauqua County Family Court had sovereign immunity.  Finally, Judge Vilardo dismissed claims

against Chautauqua County because plaintiff failed to state any plausible claim that Chautauqua

County, as a political entity, had anything to do with orders that issued from Chautauqua County

Family Court.  Plaintiff appealed, and Judge Vilardo denied *in forma pauperis* (IFP) status.  (First Case,

Dkt. No. 45.)  On appeal, the Second Circuit also denied IFP status and dismissed the appeal

"because it lacks an arguable basis either in law or in fact." (*Arce v. Turnbull*, No. 19-3412, Dkt. No.

53 (2d Cir. Apr. 30, 2020) (internal quotation marks and citations omitted).)

    Plaintiff filed his complaint in this case on June 4, 2018.  (Dkt. No. 1.)  Plaintiff has named

nearly the same defendants as in the First Case: Support Magistrate David L. Turnbull; Judge

Michael F. Griffith; Chautauqua County; and the State of New York.  On the surface, plaintiff has

attempted to avoid a repeat of the First Case by styling this case as a violation of Title II of the

4

ADA.  Plaintiff seeks $15 million in punitive damages plus a declaratory judgment that defendants

violated Title II.  According to plaintiff,

> I needed the court to supply me with some accommodation for the disability in order to obtain a fair opportunity to make my case and achieve a meritorious outcome.  The convoluted or complex rules of procedure and evidence, and case law associated with the issue, compound the problem because most litigants and many attorneys do not have competent knowledge of any of the three.  Lack of such knowledge made me easy prey for Chautauqua County Family Court with competent knowledge, and resulted in repeated triggering of my PTSD tendency to fight, freeze, or flee in the face of mounting danger of an unfavorable court ruling.

(*Id.* at 5.)  Nowhere in the complaint does plaintiff mention that he told anyone in Chautauqua

County Family Court that he had trouble understanding the proceedings and that he needed

accommodations; nor does plaintiff mention that Chautauqua County Family Court denied any

request.[2]  Plaintiff did not mention anything about accommodations or denial of accommodations in

the First Case, either, which leads the Court to look beneath the surface to other statements in the

complaint.  As with the First Case, plaintiff asserts that "David L. Turnbull's tortious interference

and vigorous use of his position to wrongfully interfered with the relationship between me and my

son, resulting in irreparable damage to our family (2014-Present)."  (*Id.* at 4.)  Elsewhere in the

complaint, plaintiff asserts that "defendants' intentionally, maliciously, and tortiously took my son

and made me and my family homeless.  Because of the tortious conduct set forth above, l have

suffered severe physical pain and suffering, fear, anxiety, depression, loss of civil rights and

remedies, severe and permanent emotional and psychological pain and suffering, despair, [and] loss

of years with my son."  (*Id.* at 5.)  In other words, just as in the First Case, plaintiff wants a federal

court to overturn state-court proceedings and judgments to award him custody of his son.

---

[2] Asking for specific accommodations, and being explicitly denied those accommodations, is different from plaintiff's statement, without context, that defendant Turnbull "acknowledged that I do have a disability." (Dkt. No. 1 at 4.)

Defendants filed their respective motions on November 4 and 19, 2019.  In short, defendants have made numerous arguments to respond to plaintiff's allegations.  The *Rooker-Feldman* doctrine, according to defendants, requires dismissal to avoid having this Court sit in appellate review of state-court judgments.  Defendants argue that Judge Vilardo's decision in the First Case and the Second Circuit's dismissal of plaintiff's appeal mean that res judicata prevents further litigation here.  Even if the Court took plaintiff's ADA claim at face value, the limitations period for such a claim has long since passed, and plaintiff's claim would be far too conclusory anyway.  The individual defendants, according to defendants, have judicial immunity, while the State of New York would have both sovereign immunity and protection from damages by an express provision of the ADA.  Finally, Chautauqua County has nothing to do with Chautauqua County Family Court, and punitive damages would not be available against the County.

The Court had given plaintiff through December 19, 2019 to respond to defendants' motions.  Plaintiff responded with his own motion, filed on January 17, 2020, seeking appointment of counsel but also attacking the individual defendants for lacking subject-matter jurisdiction within Chautauqua County Family Court.  Plaintiff also attacked Judge Vilardo for failing "to provide an analysis of how Turnbull and Bobseine gained subject matter jurisdiction to conduct hearings on visitation or custody."  (Dkt. No. 18-1 at 3.)

## III.    DISCUSSION

Of the various arguments that defendants have raised, the one that draws the Court's immediate attention concerns the *Rooker-Feldman* doctrine, because it implicates subject-matter jurisdiction and the Court's ability even to entertain this category of case.  Because of the implications for subject-matter jurisdiction, the Court *sua sponte* will raise the related issue of the domestic-relations exception.  *See Fort Bend Cty., Texas v. Davis*, ___ U.S. ___, 139 S. Ct. 1843, 1849

6

(2019) ("Unlike most arguments, challenges to subject-matter jurisdiction may be raised by the

defendant at any point in the litigation, and courts must consider them *sua sponte*.") (internal

quotation marks and citations omitted).

The general standard for dismissal under Rule 12(b)(1) is fairly straightforward.  "A case is

properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court

lacks the statutory or constitutional power to adjudicate it."  *Makarova v. U.S.*, 201 F.3d 110, 113 (2d

Cir. 2000) (citation omitted).  Defendants have two ways, facial and factual, to challenge subject-

matter jurisdiction under Rule 12(b)(1):

> The first way is to mount a challenge which accepts the plaintiff's version of
> jurisdictionally-significant facts as true and addresses their sufficiency, thus requiring
> the court to assess whether the plaintiff has propounded an adequate basis for
> subject-matter jurisdiction.  In performing this task, the court must credit the
> plaintiff's well-pleaded factual allegations (usually taken from the complaint, but
> sometimes augmented by an explanatory affidavit or other repository of uncontested
> facts), draw all reasonable inferences from them in her favor, and dispose of the
> challenge accordingly.  For ease in classification, we shall call this type of challenge a
> "sufficiency challenge."
>
> The second way to engage the gears of Rule 12(b)(1) is by controverting the
> accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the
> plaintiff and proffering materials of evidentiary quality in support of that position.
> Unlike, say, a motion for summary judgment under Federal Rule of Civil Procedure
> 56(c), this type of challenge under Federal Rule of Civil Procedure 12(b)(1)—which
> we shall call a "factual challenge"—permits (indeed, demands) differential
> factfinding.  Thus, the plaintiff's jurisdictional averments are entitled to no
> presumptive weight; the court must address the merits of the jurisdictional claim by
> resolving the factual disputes between the parties.  In conducting this inquiry, the
> court enjoys broad authority to order discovery, consider extrinsic evidence, and
> hold evidentiary hearings in order to determine its own jurisdiction.
>
> The rationale for this praxis is obvious.  A court's authority to hear a
> particular case is a necessary precondition to the proper performance of the judicial
> function.  Thus, when a factbound jurisdictional question looms, a court must be
> allowed considerable leeway in weighing the proof, drawing reasonable inferences,
> and satisfying itself that subject-matter jurisdiction has attached.

*Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363–64 (1st Cir. 2001) (citations omitted); *see also, e.g.,*

*Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016) (summarizing facial challenges, where "the plaintiff has no evidentiary burden," and factual challenges, where "the plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant if the affidavits submitted on a 12(b)(1) motion reveal the existence of factual problems in the assertion of jurisdiction") (internal quotation and editorial marks and citations omitted); *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (summarizing that "[a] facial attack concerns an alleged pleading deficiency whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites") (internal quotation and editorial marks and citations omitted). Here, the domestic-relations exception and the *Rooker-Feldman* doctrine put defendants on the first path outlined above.

"The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States. As to the right to the control and possession of this child, as it is contested by its father . . ., it is one in regard to which neither the congress of the United States, nor any authority of the United States, has any special jurisdiction. Whether the one or the other is entitled to the possession does not depend upon any act of congress, or any treaty of the United States or its constitution." *Ex parte Burrus*, 136 U.S. 586, 593–94 (1890). "We conclude, therefore, that the domestic relations exception, as articulated by this Court since [*Barber v. Barber*, 16 L. Ed. 226 (1859)], divests the federal courts of power to issue divorce, alimony, and child custody decrees. Given the long passage of time without any expression of congressional dissatisfaction, we have no trouble today reaffirming the validity of the exception as it pertains to divorce and alimony decrees and child custody orders." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992); *accord Hernstadt v. Hernstadt*, 373 F.2d 316, 317 (2d Cir. 1967) ("Since the very early dicta *In re Burrus*, 136 U.S. 586 (1890), it has been uniformly held that federal courts do not

adjudicate cases involving the custody of minors and, a fortiori, rights of visitation."). Here, plaintiff has stated numerous times, across two cases, what he wants from federal court: He lost custody of his son in Chautauqua County Family Court and wants his son back. Without commenting on the substance or making any findings about what happened in Chautauqua County Family Court, the Court has confirmation in the record and from the First Case that the proceedings culminated in a final judgment in 2014 concerning custody of plaintiff's son. Between the existence of a final judgment from state court and plaintiff's unmistakable efforts to upset that judgment, this Court has two reasons why it cannot entertain this case: the domestic-relations exception and the *Rooker-Feldman* doctrine. *See, e.g.*, *Botsas v. United States*, 5 F. App'x 69, 70 (2d Cir. 2001) (summary order) ("The *Rooker–Feldman* doctrine provides that federal courts lack jurisdiction over a case if the exercise of jurisdiction would result in reversal or modification of a state court judgment. Where claims raised in a federal action are 'inextricably intertwined' with a state court's determination, dismissal of the federal claims for lack of jurisdiction pursuant to *Rooker–Feldman* is proper.").

Without the power even to entertain the case, the Court is obligated to recommend immediate dismissal without even considering the other arguments that defendants have raised. In the absence of jurisdiction, appointment of counsel for plaintiff becomes unnecessary. For the sake of the record, the Court will note briefly that Judge Vilardo's Decision and Order from the First Case, combined with the Second Circuit's dismissal of plaintiff's appeal, make res judicata yet another reason to decline any further consideration of this case.

## IV.    CONCLUSION

For all of the foregoing reasons, the Court respectfully recommends granting defendants' motions (Dkt. Nos. 11, 16) and denying plaintiff's motion (Dkt. No. 18).

## V.    OBJECTIONS

A copy of this Report and Recommendation will be sent to counsel for the parties by electronic filing on the date below.  A hard copy of this Report and Recommendation will be mailed, by first-class mail, to plaintiff at his address of record.  "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Any objections must be filed electronically with the Clerk of the Court through the CM/ECF system.

"As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point."  *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (citations omitted); *see also Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Where parties receive clear notice of the consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision.") (citation omitted).  "We have adopted the rule that failure to object timely to a magistrate judge's report may operate as a waiver of any further judicial review of the decision, as long as the parties receive clear notice of the consequences of their failure to object.  The rule is enforced under our supervisory powers and is a nonjurisdictional waiver provision whose violation we may excuse in the interest of justice."  *United States v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 38–39 (2d Cir. 1997) (internal quotation marks and citations omitted).

"Where a party only raises general objections, a district court need only satisfy itself there is no clear error on the face of the record.  Indeed, objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke de novo review.  Such objections would reduce the

magistrate's work to something akin to a meaningless dress rehearsal." *Owusu v. N.Y. State Ins.*, 655 F. Supp. 2d 308, 312–13 (S.D.N.Y. 2009) (internal quotation and editorial marks and citations omitted).  "In addition, it would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and—having received an unfavorable recommendation—shift gears before the district judge." *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir. 1988) (citation omitted).

SO ORDERED.

___/s Hugh B. Scott_____
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: May 13, 2020

11